## JESS DAVIS V. THE STATE.

### No. 10306.   Delivered February 2, 1927.

### Rehearing denied June 22, 1927.

**1.—Murder—Evidence—Certified Copy of Judgment—Held Insufficient.**

On his trial for murder, appellant offered in evidence, what purported to be a certified copy of a judgment and sentence of the District Court of Ford County, Kansas, showing the conviction of the deceased for robbery. It bore only the certificate of the party purporting to be the clerk of that court, as thus authenticated it was not entitled to admission in evidence in the courts of this state.   See Walker v. State, 64 Tex. Crim. Rep. 70, Ruling Case Law, Vol. 15, Sec. 413, p. 938.

**2.—Same—Evidence—Motion to Suppress Before Offered—Properly Overruled.**

Appellant's motion "in limine" to suppress the testimony of officers which was claimed to have been obtained without a search warrant, was properly overruled.   The question should have been raised by proper objection when the evidence was offered.   See Foster v. State, 104 Tex. Crim. Rep. 121.

**3.—Same—Evidence—Opinion of Witness—Properly Excluded:**

Where appellant was asked on his direct examination, "Did or not the deceased, Harry Grady, have an ungovernable temper," the state's objection was properly sustained.   The answer called for an opinion of the witness, and he was not shown to have such intimate knowledge of deceased's temper to entitle him to testify as to it.

**4.—Same—Bill of Exception—Incomplete—No Error Presented.**

Where a bill of exception complains of the admission of testimony upon certain grounds, without setting forth a certificate of facts forming a basis for such objections, same is incomplete, and shows no error.   Grounds of objection are not regarded as statement of facts.   See Sec. 209 Branch's Ann. P. C. and note 21 under Art. 744 Vernon's C. C. P. of 1916.

**5.—Same—Charge of Court—On Manslaughter—Not Objectionable.**

In the absence of statutory adequate cause, it is sufficient to instruct the jury that in determining the adequacy of the provocation, they might consider all the facts and circumstances in the case, and a general objection to such charge does not reach it.

**6.—Same—Continued.**

If appellant desired an instruction grouping facts upon which he sought to base "adequate cause" he should either have objected specifically to the charge for this omission, or have submitted a special charge containing the desired grouping of facts.

**7.—Same—Charge of Court—How Considered—Rule Stated.**

In passing upon the charge of the court same will be considered in its entirety.   Isolated paragraphs, if considered alone, may be subject to the

criticisms directed by appellant, but when considered in connection with other paragraphs is found to be wholly sufficient. Appellant's objection to paragraph 17, viewed in the light of paragraph 20, is not subject to the criticisms directed against it. See Art. 666 C. C. P. 1925.

**8.—Same—Charge of Court—Restricted to Issues Raised.**

It is not proper practice for the trial court to submit issues not presented by the evidence. In his charge to the jury in this case, in which he failed to submit the presumption, set forth in Art. 1223 P. C. 1925, the court was not in error, there being no evidence raising such issues. See Wells v. State, 83 Tex. Crim. Rep. 618.

**9.—Same—Continued.**

Nor was there any error in the court's failure to charge on the defense of a homicide committed in the perpetration of robbery or in defense of property. No element of the offense of robbery or the defense of property being present in the transactions between all parties, just prior to the killing. See Art. 1224 P. C. 1925; Laws v. State, 26 Tex. Crim. App. 643 and Surges v. State, 88 Tex. Crim. Rep. 288.

ON REHEARING.

**10.—Same—No Error Presented.**

In his motion for rehearing, appellant adopts the propositions presented in the motion for a rehearing in Hugh Davis v. State, No. 10307, this day decided. That case having been properly overruled, for the reasons therein set forth, the motion in this case is also overruled.

Appeal from the District Court of Wilbarger County. Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction of murder, penalty forty-five years in the penitentiary.

The opinion states the case.

*J. Ross Bell* of Paducah, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for murder of Harry Grady, punishment being 45 years in the penitentiary.

This is a companion case to those of Hugh Davis v. State, No. 10307, and Owen Davis, alias C. E. Strickland v. State, No. 10263, (opinions in each of which were delivered on the 12th day of January, 1927).

Appellant offered in evidence a purported certified copy of a judgment and sentence from the District Court of Ford County, Kansas, showing conviction of deceased for the offense of rob-

bery. It bore only the certificate of the party purporting to be the clerk of that court. Upon objection the court correctly excluded it. It was not authenticated in such manner as entitled it to admission in evidence in the courts of this state. Walker v. State, 64 Tex. Crim Rep. 70, 141 S. W. 243, Ruling Case Law, Vol. 15, Sec. 413, page 938; Rev. Stat. U. S., Secs. 1519, 1520; (U. S. Comp. Stat., 1913, pp. 647 and 648). Appellant testified that he had been told by deceased of such conviction and thereby received the benefit which might result from that knowledge.

The court properly overruled appellant's motion "in limine" to suppress the testimony of officers which was claimed to have been obtained without search warrant. This procedure is foreign to our practice. The question should have been raised by proper objection when the evidence was offered. Foster v. State, 104 Tex. Crim. Rep. 121, 282 S. W. 600.

It appears from bill of exception number three that while appellant was testifying in his own behalf his counsel asked him the following question, "Did, or not, the deceased, Harry Grady, have an ungovernable temper?" The state objected for no stated reason. The objection was sustained. Exception was reserved, the bill certifying that if permitted appellant would have answered that deceased did have an ungovernable temper. Waiving discussion of the doubtful propriety of the form of the question in any case, it is sufficient to say that the bill is entirely too meager to show upon its face error in the court's ruling. Nothing appears in the bill to indicate that appellant was qualified by association with deceased to have answered the question. So far as the bill shows the question could with equal propriety have been directed to one who was an entire stranger to deceased. With the bill in this condition we must assume the court ruled correctly.

By bills of exception four and five complaint is made because the state was permitted to prove by witnesses Morgan and Whitfield certain statements of W. F. Davis (father of appellant) made after the killing. The objections urged were that the statements were not made in appellant's presence, were no part of the res gestae, and were sought to be used to impeach W. F. Davis on an immaterial matter. These things appear in the bills as grounds of objection only, which cannot supply a certificate of facts forming a basis for the objection. (See Sec. 209 Branch's Ann. Tex. P. C., and Note 21, under Art. 744, Vernon's C. C. P. 1916).

We find in the record thirteen pages of typewritten objections

to the charge of the court. The charge has been examined in connection with the objections urged. There appears no basis for a great majority of the criticisms. It may be the court in response to objections corrected his instructions. No special charges were requested upon any issue and if appellant has any just ground of complaint it must be predicated upon the objections being sufficiently specific to point out the particular matters of omission or commission thought to be erroneous. One complaint is that the charge on manslaughter is too general in that it does not tell the jury what "acts, demonstrations or circumstances would constitute adequate cause" to reduce the killing to manslaughter. In the absence of statutory adequate cause it would be manifestly improper for the court to tell the jury that any particular circumstance or combination of circumstances would constitute adequate cause, this being a question of fact for the jury to determine under appropriate instructions. The court told the jury that in determining the adequacy of the provocation they might consider all the facts and circumstances in the case. If appellant desired an instruction grouping the facts upon which he sought to base "adequate cause" he should either have objected to the charge or this omission and in connection therewith submitted a special charge containing the desired grouping, or else made his objections specific and pointed out therein the several facts and circumstances which he sought to have embraced in such instruction.

Paragraph seventeen of the charge reads as follows:

"Should you find from the evidence, or have a reasonable doubt thereof, that at the time of the homicide, or just prior thereto, that the deceased, Harry Grady, had at said time taken money belonging to said Jess Davis with the intent to deprive the said Jess Davis of the value thereof, and appropriate the same to the use and benefit of him, the said Harry Grady, and that immediately thereupon the said Harry Grady made an attempt to draw a pistol from his pocket, and that the said Jess Davis, thereupon shot and killed the deceased, Harry Grady, then you acquit the defendant, and say by your verdict 'Not Guilty.' "

Objection was made that such instruction was an undue limitation upon appellant's right of self-defense in that it made his right to kill depend upon the precedent fact that deceased had taken money from appellant. An examination of the facts reveals that this charge was a direct application of appellant's version of the matter. However, if this were the only charge on

self-defense it might present some difficulty. In paragraph twenty-one of the charge, the jury was instructed as follows:

"You are instructed that, if you find and believe from the evidence introduced before you, that just prior to or at the time of the killing testified about, that the deceased was by words or acts or both, doing anything which led the defendant, Jess Davis, to have a reasonable apprehension under all the facts of this case, that his life and the lives of Hugh Davis or Owen Davis was in danger, or that either or any of them, was in danger of suffering serious bodily injury at the hands of deceased, then Jess Davis, the defendant, had the right to shoot under the law and take the life of the deceased, or if you have a reasonable doubt thereof, as to such state of fact, you will acquit the defendant and say by your verdict 'Not Guilty.'"

In view of this instruction giving appellant the right to kill without limitation of any character if from the "words or acts of both" of deceased it reasonably appeared to appellant that he or his brothers were in danger at the hands of deceased it does not appear that the limitation complained of in the seventeenth paragraph (if an error) would call for a reversal under the facts and circumstances of this case under Article 666, C. C. P. (1925 Rev.) which provides that judgments shall not be reversed for errors in the charge unless the error was calculated to injure defendant's rights.

Appellant objected because the charge did not contain an instruction on the presumption from the use of a deadly weapon by deceased under Article 1223 of the Penal Code (1925 Rev.). The facts did not call for such instruction. Deceased was not shown to have had a pistol. Appellant does not claim to have seen one. He only says he thought deceased had one and that he was attempting to draw it. Wells v. State, 63 Tex. Crim. Rep. 618.

Objections were presented because the court omitted to charge the provisions of Art. 1222 P. C. (1925 Rev.) which justifies a homicide committed for the purpose of preventing robbery, and also because no charge was given on defense of property. This of necessity brings in review the evidence. Smith and Grady (the deceased) had been working on the Davis farm, upon which Hugh Davis, Owen Davis and appellant (Jess Davis) lived with their father, W. F. Davis. Hugh and Owen were also indicted for the killing and did not testify. W. F. Davis did not see the killing, but testified that Smith, deceased and witness' boys were engaged in a game of cards a few minutes before he heard the shot. Smith and deceased had been paid off on the morning of

the homicide, and went to town with two of the Davis boys. Some intoxicating liquor was procured and they returned to the farm. According to Smith's version the Davis boys continued to drink until they became intoxicated and finally made an assault on him and deceased for the purpose of robbing them of the money which had been paid them that morning. He denies that the trouble arose over a card game, but says that appellant and Owen by force took his money while Hugh with a shot gun compelled deceased to sit on a trunk during the time this was being accomplished. At this point we quote Smith's evidence.

"* * After they got my money, Hugh Davis said, 'What will we do with these sons-of-bitches?' and when Hugh Davis said, 'What will we do with them?' Jess Davis said, 'Go ahead and kill both of the sons-of-bitches.' When Jess said this, Hugh brought the gun up in Harry's (deceased's) face and held it there for two or three seconds. Harry was sitting on the trunk, facing Hugh. Well, Hugh brought the gun up in Harry's face and held it there for two or three seconds and then lowered it, and Jess Davis said, 'Give me that gun.' Hugh Davis handed it to Jess, and said, 'Go ahead and kill both the sons-of-bitches.' Jess Davis taken the gun, came up with it in Harry's face and pulled the trigger. The gun fired. At the time Jess Davis shot him, Harry Grady was sitting on the trunk. He didn't make a move to draw a pistol. He just smiled and said, 'Go ahead and pull the trigger,' or something like that. I was looking at Harry Grady at the time Jess Davis shot him. He did not make any move to draw a pistol. After the shot was fired, Jess Davis put the gun on me. I knocked it up and run out of the room."

It is apparent that no such issue as contended for by accused was raised by the state's evidence. Appellant was the only other witness who testified to the incidents of the homicide. He says that after the boys returned from town they engaged in a card game in which he had won all of deceased's money; that he had put some of it in his pocket but that some was still lying in front of him; that he and deceased had stopped playing but that Owen Davis and Smith were still engaged in the game. He asserted that the game was fairly played and the money had been won by the rules of the game. He says, that finally Owen won all of Smith's money, whereupon Smith said, "You s..... of b......... have been playing crooked all the time," and grabbed the money Owen had won, deceased at the same time grabbing appellant's money; that Owen and Smith engaged in a scuffle, Owen endeavoring to take the money from him; that Hugh Davis held a shot gun on deceased to keep him out of the fight. According to appellant's

version, after the money was taken from Smith, deceased began cursing appellant. At this point we quote his testimony given on direct-examination.

"Grady said, 'You God-damned sons-of-bitches, you been playing crooked all evening. You will not get a cent of this money from me,' or something to that effect. He said, 'You won't get a cent of this money from me,' or something like that and reached for his hip. At the time he made this demonstration for his hip pocket, he said, 'I've got one full of lead—full of bullets. I've got one that is loaded.' So I shot him because I thought he was going to shoot me. I thought he had a gun, and he had an expression on his face that I had never seen there before. I could see he was mad. From what I knew about him I knew he would carry out a threat."

Upon cross-examination relative to the same subject he testified:

"* * Grady grabbed my money, as Smith grabbed Owen's money. I grabbed Smith and told Owen not to let him take the money. Harry wasn't doing anything until Smith started it. Then I started and Owen started to take the money away from Smith. I didn't jump on them after they had taken my money, Hugh picked up the shot gun and told Grady to get back. Hugh told him to get back and kept him back while we were taking the fifteen dollars away from Smith that he had robbed us of. When we got the money away from Smith, I turned to Hugh and said, 'Set the gun down.' Harry commenced cussing me. He said, 'I will kill every son-of-a-bitch of you.' Hugh had the gun while Harry was cussing part of the time. I told him to set it down and reached over and took it, and Harry called me a son of a bitch about that time, and I whirled around towards Harry and started back with the gun. I cocked the gun and said, 'Stop it.' I didn't want to kill him. I never thought I would kill Harry Grady. I always liked him, but he was cussing me. I knew which barrel was loaded. It was the right hand barrel. I knew which hammer to cock. After I got the gun on him, Grady still was cussing me. He told me to pull the trigger on the God damned thing, but I didn't pull when he told me to. I didn't pull the trigger until he started to reach for his hip pocket. I didn't see his pistol at this time. I saw it before he went to town, but I hadn't seen it anywhere else."

When homicide to prevent "robbery" was justified under Art. 1222 of the Penal Code (1925 Rev.) the offense of robbery designated under Art. 1408 P. C. (1925 Rev.) was in contemplation. The elements of that offense are entirely wanting in the conduct

of Smith and deceased as related by appellant. At most they suddenly snatched the money which, according to appellant, they claimed to have been unfairly won. No assault was made by either Smith or deceased, no violence directed towards the person of either appellant or his brothers, and the only threat of violence was to deter them from retaking the money, possession of which Smith and deceased had secured. Instead of raising the issue of a homicide to prevent robbery or in defense of property we think appellant's evidence excludes it. Art. 1224 P. C. (1925 Rev.) justifies homicide in defense of property under certain conditions and limitations, one of them being that if possession of the property "be once lost, it is not lawful to regain it by such means as result in homicide." According to appellant when deceased took his (appellant's) money no demand was made for its return, but appellant immediately joined his brother Owen in taking the money away from Smith. After this was accomplished, he still made no demand on deceased for the return of the money; instead he told Hugh to put down the gun which he was holding on deceased. Appellant himself took the gun, and we must infer turned away with it for he says himself when deceased called him a s____ of a b_____, "I whirled around towards Harry (deceased) and started back with the gun," and presented it at deceased but did not fire until deceased "started to reach for his hip pocket." In discussing the same statute here sought to be invoked but involving a claimed killing to prevent theft at night this court said in Laws v. State, 26 Tex. Crim. App. 643:

"It is not the intention of the statute to justify murder. Such a construction of the statute would, to our minds, be unreasonable and exceedingly dangerous."

See also Surges v. State, 88 Tex. Crim. Rep. 288, 225 S. W. 1103. The evidence shows, we think, that appellant resented deceased's language, threw a shot gun in his face and then because (as he says) deceased made a demonstration as if to draw a pistol, shot him. In our opinion the court committed no error in omitting from his charge any instruction upon the law of homicide to prevent robbery or in defense of property.

The judgment is affirmed.                          *Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant files a motion for rehearing, adopting the propositions advanced and relied upon by him in the motion for rehearing in the case of Hugh Davis v. State, No. 10307, which motion is overruled in an opinion this day handed down. Appellant states that the propositions of law are the

same and the facts the same in the two cases, and that the two motions rest on identical grounds. We believe appellant to be correct in this. For the reasons set forth in the opinion overruling the motion for rehearing in cause No. 10307, Hugh Davis v. State, opinion this day handed down, this motion is overruled.

*Overruled.*